IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:09cr220

TION KIMBROUGH

MEMORANDUM OPINION

This matter is before the Court on the defendant's *pro se* Motion For Reconsideration Compassionate Release Under 18 U.S.C. 3582(c)(1)(A) Extraordinary and Compelling Circumstances (ECF No. 86), the Defendant's Supplemental Motion in Support for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 89), the Defendant's Supplemental Memorandum in Support of Supplemental Motion in Support for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 90), the United States' Response in Opposition to Defendant's Motion for compassionate Release (ECF No. 95), and the Defendant's Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 99). Having reviewed those papers, the file, the Presentence Report and the Worksheet in Response to Motion for Compassionate Release (ECF No. 94), and for the reasons set forth below, the defendant's *pro se* Motion For Reconsideration Compassionate Release Under 18 U.S.C. 3582(c)(1)(A) Extraordinary and Compelling Circumstances (ECF No.

86) and the Defendant's Supplemental Motion in Support for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 89) will be denied.

## BACKGROUND

Tion Kimbrough was adjudicated guilty of committing robbery in violation of 18 U.S.C. § 2113(a) and was sentenced to a term of 75 months imprisonment to be served consecutively to the term of imprisonment that Kimbrough was then serving in state confinement (on a charge of Armed Statutory Burglary for which the defendant received the sentence of twenty years imprisonment with ten years suspended). (JUDGMENT IN A CRIMINAL CASE (ECF No. 33)). Kimbrough completed service of his state sentence on February 12, 2018 and his projected release date from the Bureau of Prisons on the sentence in this case is August 2, 2023.

On December 19, 2008, Kimbrough, by force and violence, and by intimidation, knowingly and unlawfully took from a person money that belonged to the Wachovia Bank. That conduct occurred while Kimbrough was under a criminal justice sentence for a state court conviction of grand larceny from the person. Also, Kimbrough previously had been convicted of a number of offenses when he was a juvenile, but no criminal history points were attributed to his criminal history category by virtue of those juvenile convictions. Nonetheless, Kimbrough's adult criminal conviction record

2

warranted a criminal history category of VI and characterization of a career offender. Among his convictions were possessing cocaine; possessing cocaine along with a firearm; possession with intent to distribute cocaine; possession of heroin and cocaine; distribution of cocaine and possession of cocaine; unlawful assault and battery; carrying a concealed weapon; possession of a firearm by a convicted felon; possession of a firearm with an obliterated serial number; grand larceny from a person (two such convictions approximately five years apart). Kimbrough received a goodly number of lenient sentences before he was incarcerated for eight years on his firearm charges (ECF No. 74-1, ¶ 51) and ten years on the most recent armed statutory burglary charge (the state sentence being served at the time he was convicted of the offense of conviction in this case and the state sentence as to which the sentence in this case ran consecutively).

It appears from the record that Kimbrough suffers from asthma and the Center for Disease Control and Prevention ("CDC") advises that people with moderate to severe asthma are at higher risk for complications if COVID-19 is contracted. However, there is no proof in the record that the defendant suffers from the kind of asthma that is listed as a high risk factor by the CDC. Kimbrough also suffers from high blood pressure (hypertension) which also,

3

in certain circumstances, is recognized by the CDC as an increased risk factor for people who contract COVID-19.

The record also shows that Kimbrough earned his GED and has successfully completed a number of educational programs and a nonresidential drug treatment report. Also, he worked as an orderly at USP Leavenworth. He is now serving his sentence at FCI Allenwood.

Currently, FCI Allenwood houses a total of 1,258 inmates. As of July 1, 2022, no inmates and no staff member at FCI Allenwood were testing positive for COVID-19. (ECF No. 106) The record shows that, before that, 476 inmates and 53 staff members previously tested positive for COVID-19 and thereafter recovered.

The record also shows that all inmates and staff at FCI Allenwood are afforded access to vaccines. At the time the Government filed its papers, 1,740 inmates and 435 staff members had received most dosages of a COVID-19 vaccine.[1] As of July 1, 2022, 69.74% of inmates and 62.6% of staff have been vaccinated. Kimbrough received his first dose of the Pfizer-BioNTech vaccine on March 9, 2021 and his second dose on March 30, 2021.

---

[1] The difference between the total number of inmates (1,258) and the inmates receiving vaccines (1,740) is that the 1,740 figure includes inmates who had been vaccinated but are no longer at the facility. (ECF No. 106)

## DISCUSSION

### A. Procedural Matters

Before turning to the merits of the papers filed *pro se* and by counsel, it is necessary to address some procedural matters.

To begin, the paper that started this matter was filed on July 22, 2021 and is captioned as a Motion for Reconsideration. The Order from which Kimbrough seeks reconsideration is apparently a MEMORANDUM ORDER entered January 11, 2021 (ECF No. 85) in which the Court denied his *pro se* Letter Motion for Compassionate Release (ECF No. 68) and the MEMORANDUM IN SUPPORT OF MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(B) OF THE FIRST STEP ACT (ECF No. 71) that has been filed by counsel. That Order was not appealed by Kimbrough, and it is final.

The Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration in criminal cases. However, the filing of such motions is generally permitted, and they are governed by the rules that govern equivalent motions in civil proceedings. United States v. Mendez, 2008 WL 2561962, at *1 (C.D. Cal. June 25, 2008). See also United States v. Fiorelli, 377 F.3d 282, 288 (3rd Cir. 2003). The two civil rules to which those cases refer are Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b). If such a motion is filed within twenty-eight (28)

5

days of judgment, it is assessed under Rule 59(e).[2] Kimbrough's *pro se* motion was not filed within twenty-eight (28) days of the date of the denial of his previous Motion for Compassionate Release (ECF No. 68) and therefore Rule 59(e) is not available to him.

The other civil rule is Fed. R. Civ. P. 60 which permits relief from final judgments on any one of six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discoverable evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged . . . or
>
> (6) any other reason that justifies relief.

The Motion for Reconsideration filed by Kimbrough (ECF No. 86) asserts none of the grounds permitted by Rule 69(b).

Therefore, to the extent that Kimbrough seeks reconsideration of ECF No. 85, his motion would have to be denied. However, upon

---

[2] A motion under Rule 59(e) may be granted on any one of four grounds: (1) a manifest error of law or fact upon which the judgment is based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and (4) an intervening change in controlling law.

6

examination, the Motion for Reconsideration filed by *pro se* by Kimbrough is not really a motion for reconsideration at all. That is because, after the time that his previous motion was denied (ECF No. 85), Kimbrough was transferred from USP Leavenworth to FCI Allenwood and the request for compassionate release reflected in the so-called Motion for Reconsideration (ECF No. 86) pertains to facts after Kimbrough arrived at FCI Allenwood. Specifically, Kimbrough alleges that he has "been caught in a second wave [of COVID-19] at Allenwood F.C.I."

Thus, his Motion for Reconsideration will be considered as a new motion in which he asserts that, because he has "hypertension, asthmatic [sic], Type 2 Prediabetic, obesity 300 pounds . . . panic attacks and social anxiety" he is at greater risk for contracting COVID-19 at FCI Allenwood. Further, the Court appointed counsel after receiving the Motion for Reconsideration (see ECF No. 87) and directed that counsel review the situation and file any appropriate motions. Thereafter, counsel filed the Supplemental Motion (ECF No. 89) and the supporting memorandum (ECF No. 90).

Secondly, the United States has argued that Kimbrough has not exhausted his administrative remedies by not presenting his request to the Warden at FCI Allenwood. However, it appears from the record that the parties have reconciled on this issue and that, in fact, Kimbrough has exhausted his administrative remedies. With

7

that in mind, the Court will turn to the merits of Kimbrough's request for compassionate release.

**B. The Merits**

Kimbrough's principal argument for compassionate release is that "the global COVID-19 pandemic combined with Mr. Kimbrough's medical conditions present an 'extraordinary and compelling reason' for compassionate release." (ECF No. 90, p. 1). The medical conditions which are the predicate for the motion are "asthma, hypertension, obesity and being prediabetic." Id.[3] Kimbrough has, to some extent, narrowed the basis for his motion by stating as follows:

> The medical conditions that place Mr. Kimbrough at the highest risk for sever[e] [sic] illness or death if he contracts COVID-19 are his obesity and hypertension; and his asthma and prediabetic status further complicate matters.

(ECF No. 90, p. 9)(emphasis added). Kimbrough also mentions that the recent laboratory tests showed an increased creatine level in his blood and asserts that that fact "may be an early sign that the kidneys are not working properly."

---

[3] In this Motion for Reconsideration (ECF No. 86), Kimbrough asserts a history of "hypertension, asthmatic, Type 2 Prediabetic, obesity 300 pounds." He also asserts panic attacks and social anxiety. Counsel has wisely chosen to address only the medical records to be advanced as reasons for supporting the Motion for Compassionate Release.

8

Kimbrough apparently also asserts post-conviction rehabilitation as a factor warranting compassionate release. He also argues that the rehabilitation in which he has engaged militates against a conclusion of danger, a topic which will be addressed later.

In any event, the record shows that, during the twelve years Kimbrough has spent in state and federal prison, he has significantly engaged in activities and courses to help rehabilitate "his behavior." (ECF No. 90, p. 21). He has recently been moved from USP Leavenworth to FCI Allenwood so that he can participate in the Residential Drug Rehabilitation Program ("RDAP"). The record also shows that, while in prison, Kimbrough has worked three different UNICOR programs which means that he is qualified to participate in the Federal Prison Industries UNICOR Federal Bonding Program when released. He has engaged in a goodly number of educational courses and has completed his GED while in prison.

Kimbrough also seems to advance the argument that compassionate release should be based in part upon his race. (ECF No. 90, p. 8).

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that

9

'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at

10

*2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020)

### 1. Particularized Susceptibility

Kimbrough has established that he suffers from asthma and hypertension and obesity. The Government does not dispute that fact or that the CDC recognizes those conditions are presenting a greater risk of serious consequences of COVID-19 if contracted.[4] However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that Kimbrough's asthma and hypertension are "chronic conditions that are being managed in prison even though his blood pressure is sometimes elevated. The obesity is not being managed in prison.

---

[4] The record does not establish that Kimbrough's prediabetic condition or the increased creatine levels meet any CDC COVID-19 risk category.

11

The United States argues that, because Kimbrough has been fully vaccinated, he cannot establish extraordinary and compelling reasons for compassionate release even though he has shown that he suffers from asthma, hypertension, and obesity. The record shows that Kimbrough has been fully vaccinated against COVID-19 since March 2021. He received both doses of the Pfizer-BioNTech vaccine. According to the vaccine manufacturers and the CDC, that vaccination protects individuals from getting sick with COVID-19 and prevents those individuals who contract breakthrough infections from getting seriously ill even if they do contract the virus. *Key Things to Know About COVID-19 Vaccines*, CDC (May 23, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html.

Further, because the vaccine mitigates the risk of contracting COVID-19, Kimbrough must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus. United States v. Stoddard, No. 1:14cr76, 2021 WL 2379568, at *5 (E.D. Va. Va. June 9, 2021); United States v. Cabaase, No. 2:10cr57, 2021 WL 2346106, at *4 (E.D. Va. June 8, 2021); United States v. Jones, No. 3:19cr105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021). Kimbrough has not made the showing that, his vaccinated status notwithstanding, he nonetheless suffers from any extraordinary

12

condition that is terminal or severely limits his ability to function in a correctional setting. On this record, Kimbrough has not shown a medical condition that is an extraordinary and compelling reason for compassionate release.

Finally, Kimbrough argues that, because he is African-American, he is more vulnerable to COVID-19. That, in reality is an argument that COVID-19 pandemic has affected the African-American and other minority populations disproportionately. Without definitive proof, it is fair to say that general reports of the impacts of COVID-19 tend to bear out that assertion. However, notwithstanding the disproportionate impact, it is also true that a defendant's race "does not constitute a risk factor for COVID-19 in the same way an underlying medical condition does." United States v. Jackson, No. 05-20018-01-JWL, 2020 WL 5231317, at *3 (D. Kan. Sept. 2, 2020). Indeed, there is really no support for the proposition that "race," qua race, increases the person's risk for contracting COVID-19 or experiencing severe illness if it is contracted. As the United States argues, there seems to be a consensus emerging that racial and ethnic disparities in the rates of contracting, and in the adverse outcome of, COVID-19 most likely are attributable to "social determinants of health" that "have historically prevented" minority groups "from having fair opportunities for economic, physical, and emotional health."

13

<u>Health Equity Considerations and Racial and Ethnic Minority Groups,</u> CDC (Apr. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal =https%3A%2F%2Fwww.cdc.gov%2Fcorona-virus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html. Put another way, as the Court held in <u>United States v. Dimkpa</u>, "[w]hile ethnic minority groups may be more affected by the coronavirus pandemic, current evidence suggests a correlation, not causation." <u>United States v. Dimkpa</u>, No. 1:19cr443, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020)

For those reasons, most courts have decided that race, qua race qua, is not an extraordinary and compelling reason for compassionate release. <u>United States v. Leigh-James</u>, No. 3:15cr188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (collecting cases); <u>United States v. Wilson</u>, No. CCB-14-334, 2020 WL 4286873, at *2 (D. Md. July 27, 2020). Those decisions are persuasive, and the Court subscribes to them here.

In sum, Kimbrough has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Kimbrough met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates

14

and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Allenwood, the defendant's facility of incarceration. Further, the record reflects that, as of July 1, 2022, FCI Allenwood had no active case of COVID-19 among inmates, no active case of COVID-19 among staff, and 476 inmates and 53 staff members who had previously recovered from COVID-19. The record also shows a high level of vaccinated inmates and staff at FCI Allenwood.

On this record, Kimbrough has not met the particularized facility component of the applicable test.

3. **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Kimbrough had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. Kimbrough argues that he is not a danger to the community. That, he says, is because: (1) of "what he has achieved while he has been incarcerated during the last 12 years;" (2) his performance in the RDAP program; and (3) that a

15

witness against him was a cellmate and they co-existed without incident.

Those factors notwithstanding, Kimbrough's criminal history is an exceedingly serious one. It includes extensive drug dealing and crimes of violence and weapons offenses. Kimbrough is to be commended for the efforts toward rehabilitation he has made. However, they do not offset his propensity to commit crime. The offense conduct is extremely serious. Further, Kimbrough's history shows that he is inclined to commit crimes after having received relatively lenient sentences and even while on supervision or release. These facts teach that, notwithstanding his performance in the past twelve years, the RDAP program, and his successful existence with a former witness against him, Kimbrough is a dangerous person. Nor do those three factors offset the need for continued incarceration at the level originally imposed so as to protect the public and to deter Kimbrough and to promote respect for the law.

For the same reasons, none of the § 3553(a) factors suggest otherwise. In particular, the nature and consequences of the offense and Kimbrough's history and characteristics tell that continued service of the sentence imposed is necessary to protect the public, to deter Kimbrough and to promote respect for the law. Release from prison at this time would do nothing to achieve any

16

of those objectives. To the contrary, release now would run contrary to them.

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* Motion For Reconsideration Compassionate Release Under 18 U.S.C. 3582(c)(1)(A) Extraordinary and Compelling Circumstances (ECF No. 86) and the Defendant's Supplemental Motion in Support for Compassionate Release Pursuant to Section 603(b) of the First Step Act (ECF No. 89) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 6, 2022